Case number 19-5942, USA versus Travis Suggs. Argument not to exceed 15 minutes per side. Mr. Hawley, you may proceed for the appellant. Good afternoon. Go ahead. Mr. Hawley. I got you. Thanks. All right. Your Honor, I believe this is the court. I'm Michael Hawley and I represent Travis Suggs in this appeal. I'd like to reserve three minutes for rebuttal, please. Yes. Now, unless the court prefers otherwise, I'd like to start with the issues that arise from the trial, specifically with issue number three, which is that the district court erred by letting the officers testify about their interpretation or their understanding of the phone call that was played for the jury. Now, the government seems to concede that if officers testified to their interpretation of that call, it would be error. But the government says it's not an interpretation they gave, but they simply said that the call was consistent with instructions to Mr. Pride to set up a buy of half a pound of milk for Mr. Suggs. Or separately, the government says it was merely them testifying to their understanding of the call. This distinction doesn't really hold any water under this record, because the officers told the jury what the call meant, what the call meant to them. Why is that? So the cases where it seems like that's problematic and you need to have an expert are cases in which it's an officer who is, after the fact, reviewing transcripts of calls or the deciphering what they mean based on the officer's expertise. Here, it seems like our case law on when lay people can testify as to their opinions, but just like I think Pride would be able to talk about his opinion of what Suggs was saying when he made certain statements, I don't see why the convey their understanding. And it's different from those other cases, because it's not the officers reviewing a whole bunch of audio files and giving their opinions as experts. It's just the officers contemporaneously listening to the call and conveying their understanding of what the call is about. Well, I think since the officer did not listen to a massive number of recordings, they had not built up the expertise to... But they were testifying as lay people, not if they were giving lay opinions. So, yes, I think the difference between Mr. Pride, I mean, Mr. Pride was a participant in the conversation. And so he has all sorts of cues from Mr. Suggs. He's there or he's talked to him before on the phone. You know, a lot of the things they are, they're referring to previous conversations that Mr. Suggs and Mr. Pride know about. I think, you know, obviously, Mr. Pride can testify what he understood because he was part of the conversation. But the officer is just a witness, just like the jury is listening to it, and they're listening to the call. The officer is just listening to the call. And so, I think what Mr. Pride's understanding is, whether or not he parses it out and says, all right, I understand when they say, add 500 to the seven, they mean 7,500. You know, even if he's not describing the exact lingo, when he says, at the end of the day, I understood this to be, you know, as Officer Agent Goldberg said, according to the call, it was a deal for half a pound, and he just said of methamphetamines. I mean, he clearly says what he understands the call to be. And I think you can bring an officer in to give a lay opinion that really circumvents the whole requirement of an expert opinion. Because it doesn't make any difference. The officers that are listening live doesn't make any difference because they could have been listening to a recording just as well and then said, well, I listened to this recording, and this is what I understand it to be. It's always an officer giving his interpretation as a police officer. And it gives, you know... So, if it was an undercover police officer, imagine Pride was an undercover police officer, would your views change? Would Pride be able to give his opinion on what he thought Suggs was saying, even though Pride was not at all going to go through with the deal because he was an undercover police officer? I think it probably would, Your Honor, especially if Mr. Pride and Mr. Suggs had a lot of communications that no one else knew about, which is the case here. When the officer testifies, the jury believes that he does bring expertise to it. The officer knows what he's talking about. So, that's why it's dangerous to let the officer just give his lay interpretation of whatever conversation he hears in real time. Or, I mean, it could just be extended to any recorded conversation because the officers were not even playing a part in it. So, I think if you start allowing officers to give lay opinions about any conversation they hear, it heads down to a difficult situation where they're allowed to interpret. Maybe it's a spectrum, though, and it's just not either or. And the more removed from the conversation they are, the more you've got to lay a foundation, and the more they're intimately involved with the conversation, the less of a foundation. Why isn't that the way to think of it practically? And of course, you get cross-examination to, you know, why are you drawing that conclusion as to what that phrase meant? It could be, Your Honor. It could be. It could be. And I don't, but I don't, and I would say that, you know, an officer who's listening surreptitiously has no involvement in the conversation. They're no closer to the conversation than the jury that's just listening later on. If the officer wants to give his reasons for, if the officer has special reasons to understand what they're talking about, then... Well, I mean, but if the officers listen for three hours, that gives them something that the jury doesn't have. They're not going to make the jury listen all three hours, probably. Exactly, Your Honor. And I think that's when the officer has developed the expertise under Freeman to come in and say, well, I listened to three hours. I heard all this stuff. I heard them using those words over and over again, and I understand what it means. So I can explain it to you because I have this special knowledge. What do you make, speaking of Freeman, it seems to me that you said a Ninth Circuit case suggesting it was an error for the court not to formally certify the officer as an expert, but our case law seems to suggest that that itself would be an error. We have a case called Johnson that says you're not supposed to certify experts, law police officers as experts because that gives them undue sway with the jury and the way that it should work is that the prosecutor should ask qualifying questions at the beginning. And if there's any concern with the officer's expertise, then the defendant can object and you can have a sidebar colloquy where you lay the foundations for whether or not the officer is an expert. But the way I guess I read our case law is it was a little different than Ninth Circuit's approach because we didn't think it was wise to certify the officer as an expert in front of the jury. Yes, I don't recall if in the Ninth Circuit case, the Lopez case, if they were saying, I don't think the Ninth Circuit said you had to certify the expert in front of the jury, or that wasn't the point of citing it. The point of citing it was that the government didn't proffer this witness, this officer, as an expert. I don't know that it's necessary under our case law as long as the prosecutor laid the foundation for the law enforcement officer's expertise. I think that the way I read our framework was you lay the foundation, you show why the officer has all this experience in drug cases, and then you can ask the officer questions that would be suited for an expert. And it's on the defendant to object at that point and say, no, the officer isn't qualified based on you haven't laid a foundation for that type of testimony because there's insufficient qualifications. Well, I think there's burdens on both sides, Your Honor, that the government should identify their expert witnesses prior to trial. Certainly, but did you raise like a rule 16? Objection or was there? I assume that they did not do that in this case. They did not identify these officers as expert witnesses. I'm quite sure. I didn't go back and double check that. But I was curious, but you didn't raise that in your appeal as a basis for objecting to have this testimony come in. No, Your Honor. I think that goes to the context of whose fault it was that these officers weren't certified or no one acknowledged that they were experts. The government didn't say they're going to be experts. And so the judge didn't break in and say, I need to make sure I'm finding that they have the proper expertise. Their testimony counsel officers testified that they had monitored the call, which right that they were just monitoring the call along with. I mean, they were listening to the CI and the defendant here, and then they were able to corroborate what went on. I mean, that's what the jury understood, right? Not so much expert. Well, Your Honor, they explicitly said, you know, according to the call, they agreed on half a pound. Or, you know, my recollection of the call is that they said this. So so they're telling the juror what happened in the call. I think if the judge had ruled properly, if the judge had said, No, the officers cannot testify about the contents of the call, it would have looked more like, you know, the officer said, we asked Mr. Pride to serve a deal for a half a pound of meth. They played the call. And the officer said, Okay, now we went ahead and we this operation, where we went and tried to control it. But Mr. Pride was a little flaky. And, and this is what happened. You know, they wouldn't add to it. Oh, and that call was the call where they agreed on half a pound of meth, which, which, in this case, proved to tend to support a very important fact, which is that Mr. Suggs brought the half a pound of meth. That was the whole issue. Because that was the nature of Mr. Suggs' defense. He didn't bring the half a pound of meth, the desperate informant brought. So I think those issues and the flight instruction, like the flight instruction, the judge wound up putting his thumb on the scales in favor of the government theory, because each side had a theory that would explain why he would run. But the way I read our case law on that flight instruction, though, is you only need the instruction under which the view of the facts under which it's relevant only needs to be a plausible theory for why you run, it doesn't need to be the only plausible theory for why he runs. So you, you could have argued in defense to that to the jury that, oh, well, it's obvious why he ran. He was running because of the marijuana. But I don't know that that alternative explanation makes the judge abuse his discretion and saying there's sufficient evidence in support of the government's theory that he was running because of the meth in the car. You can go ahead and answer the question. I think the plausible support standard is, I mean, that makes sense generally. But in this special situation, there has to be, it has to be ruled out that you don't have an innocent reason. Otherwise, there's no reason to be giving the instruction. In fact, I don't think there's a very good reason for the instruction to begin with. The case law should allow the prosecutor to argue this and not be stopped from making that argument. But there's really no reason for the judge to step in and say, yeah, that's a good thing. Okay. We'll wait for Mr. Glaser. May it please the court. William Glaser for the United States. The court has made clear that officers may testify to their background understanding of an investigation. And that's all that took place here when Agents Del Giorno and Goldberg referenced the phone call. Essentially, the prosecutor was attempting to establish the background of the investigation and explain how they ended up in that parking lot on that particular date. So there were two questions that Agent Del Giorno answered. First, whether or not he heard the word methamphetamine on the call. And he admitted, no, I did not hear the word methamphetamine. And the second was whether he heard a specific weight. And he said that from his recollection, everything was agreed upon as far as the price and the weight. The objection, there was only a preserved objection with respect to methamphetamine. That was his understanding from the call. But again, he only answered two questions, whether he participated in the call, and did he understand that a deal would occur? And then what his understanding was of the nature of the drug. That was the extent of the testimony. It was a span a few lines of testimony. And so it's even if there were error, which I think it's pretty clear under this court's jurisprudence, there wasn't, even if there were any error would be harmless with respect to Agent Del Giorno. Can I ask you about the expert? Because you, at least maybe not so much with respect to this, but with respect to the rental car statement, which clearly in my view was more in the line of an expert. I don't think that that had the idea that we need rental cars at drug transactions to avoid forfeitures. Your frontline argument there is that this was an expert. What do you make of the failure to sort of assume that the government didn't certify under Rule 16 that these officers would be getting expert testimony? No, Your Honor, we did not notice expert testimony in this case. And I think, again, this goes to the reason is that this was truly a single statement in the entirety of Agent Goldberg's testimony. This court is reviewing for plain error because there was no objection lodged. And I think even if the court were, I think the court can skip the first two plain error prongs and go straight to prejudice if it so desires. And the offhanded remark that it's a common practice for drug dealers to use rental cars, it frankly could not have any possible effect on the verdict when we have the seizure of drugs that were in the car. We have the wire where the jury heard Suggs saying you wanted half a pound, telling him that there was no shake in drugs, actually shaking the bag and telling him, you know, look. So when you look at the text messages that went back and forth between Pride and Suggs and the phone call, there's really no plausible argument that this offhanded remark. Can I ask you just your understanding? Because I did think that our case law might be different than the Ninth Circuit, at least assume that there is an expert appropriately designated pretrial under Rule 16. The way I read our case law, it suggests that you're allowed to just start asking qualifying questions to ensure that the expert or that the officer is an expert and that you don't need to actually take the step to formally certify the officer as an expert. Is that your understanding of how these types of trials work? Or do you have a different understanding as to how an officer should be designated an expert? Your Honor, I'll admit that I don't know the ins and outs of the Sixth Circuit law on this. I think that that sounds consistent, though, with the case that we cite from this court, the Lopez Medina case, because there the court found no error in the failure to sort of go through the process of formally qualifying the expert and actually found the Ninth Circuit in a similar situation found that there was an error, but it was harmless to not qualify the expert. But this court said there just wasn't any error at all. And that was under an abusive discretion standard. So I think, a fortiori, there would be no plain error in failing to qualify the expert. But I think that to answer your question, I think that it depends on the trial from what I understand, because sometimes defendants are obviously very concerned about the sort of weight that might be given to officer testimony if they are formally qualified. But I think it is clear that sometimes they have to be. And I think, and I don't know Sixth Circuit law well, but I think oftentimes that does take outside the jury's presence. If I can briefly address the flight instruction as well, I'd like to note this also is reviewed for plain error because they're the objection that Mr. Suggs made below was only to his only argument was that it unconstitutionally shifted the burden of proof. He did not make the sort of fact specific argument that he makes now on appeal that there was no way that the jury could reasonably infer consciousness of guilt of the crime charged as opposed to his alternative defense theory that he brought marijuana to the transaction. And the standard that this court has consistently applied is whether or not the inference, that is the inference of consciousness of guilt, was specifically of the crime charged. That inference need only be supported, reasonably supported by the evidence. And I think here his competing defense theory, which was implausible and undermined by all the evidence, was not enough to overcome the reasonable inference that he was actually fleeing because of the marijuana in the car, pardon me, of the methamphetamine in the car and not because of the two grams of marijuana. So we had, there was approximately two thirds a pound of methamphetamine and there were two grams of marijuana in the car. So his defense theory was implausible. It was inconsistent with the party's statements. And in any event, there's no plain error here, certainly not a prejudicial one in light of the overwhelming evidence. I think the flight, Mr. Stugs' flight in any way the jury might have given to that was insignificant in light of the overwhelming evidence. I'm happy to address any of the remaining claims, including the prosecutorial misconduct claim. I think we're fine. All right. Thank you. Mr. Hawley, get your rebuttal. You got to put the, there you go. Getting used to this. Yeah. Now the government rests partly on their argument that the defense just simply wasn't plausible and it was inconsistent with the recording of what happened in the car. It's really for the jury to decide. The judge decides what instructions to give based on whether he believes the defendant's defense. Then you wind up with what happened here. The instruction looks like the judge is favoring the government's theory over the defense theory. And as for the harmlessness analysis, the government says, well, it's a couple lines here. It's a single line here. Those single lines can be important when it's in, you know, the jury heard this phone call. They probably couldn't make heads or tails of it. And then the government in a few lines from an officer tells them what it meant. Now that's, that can be significant. So I think that we do think it was an error to let the officers testify to their opinion and that it was not harmless. Thanks to both of you for your helpful briefs and arguments. We appreciate it. Thanks for Thank you. Case will be submitted and the clerk may call the last case.